[Cite as *State v. Jones*, 2018-Ohio-2219.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2017-CA-27 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-299 |
| | : | |
| MATTHEW L. JONES | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of June, 2018.

. . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

MARSHALL G. LACHMAN, Atty. Reg. No. 0076791, 75 North Pioneer Boulevard, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant, Matthew Jones, was, on June 10, 2016, indicted on one count of discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), a felony of the second degree, with an attached three year firearm specification under R.C. 2941.145, and one count of having weapons under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree.   Jones was appointed counsel, and the case was scheduled for a jury trial on August 29, 2016.   Jones, prior to the trial's commencement, orally requested the appointment of new counsel.   The trial court, as reflected by an entry and order filed on August 29, 2016, granted Jones' request for alternate counsel.   Jones, also on August 29, executed a waiver of his statutory speedy trial rights, and the August 29 trial date was vacated.

**{¶ 2}** New trial counsel (hereinafter trial counsel) was appointed with trial counsel, on October 11, 2016, filing a motion seeking the suppression of two out-of-court identifications.   The trial court conducted a hearing on the motion on January 4, 2017, with the trial court, on January 13, 2017, issuing a written decision overruling the suppression motion.

**{¶ 3}** A jury trial was scheduled to begin on January 23, 2017.   However, Jones, on January 20, entered a negotiated plea.   Jones pleaded guilty to both indicted counts with the State dismissing the firearm specification.   It was further agreed that Jones would receive a concurrent[1] prison term with the State recommending a six year prison

---

[1] The court and the parties used the terms "merger for purposes of sentencing" and a

term. Jones, it is noted, was, based upon a previous second degree felony conviction, required, based upon his plea to a second degree felony, to serve a prison term. Jones, given this, was seeking a minimum two year prison term. Sentencing, at Jones' request, was scheduled on January 24, with this quick turnaround preventing the completion of a Presentence Investigation Report (PSI).

{¶ 4} The trial court, after each attorney spoke and Jones was provided an allocution opportunity, announced a five year prison term on the improper discharge count and a two year prison term on the weapons under disability count, to be served, as agreed, concurrently. Jones, after the sentence had been pronounced, stated that he "wasn't going to take five or six years[,]" and that trial counsel "told [him] that [he] wasn't going to get five or six years." The trial court, at this juncture, completed the sentencing hearing and then informed Jones that "another attorney [will] come and talk to [you] about [your] status and whether [you want to file] a motion to vacate the plea."

---

"concurrent sentence" interchangeably as it relates to the disposition of the having weapons while under disability count. A defendant may be found guilty at trial or enter guilty pleas to allied offenses of similar import, but he may be sentenced, and, thus, convicted, only on one of the offenses, with it being the State's choice regarding the offense upon which a sentence is imposed. In this circumstance, the offense upon which no sentence is imposed is said to merge into the second offense. The net effect is that a defendant is convicted of one of the allied offenses of similar import. This being said, it is apparent in this case that the term "merger for purposes of sentencing" was used to convey the agreement that Jones would receive a concurrent sentence on the having weapons while under disability count. The parties, as noted, used the terms "merger for sentencing purposes" and a "concurrent sentence" interchangeably, there was not a discussion suggesting the offenses are allied offenses of similar import, and there is not a valid argument they are of similar import. Further, the State, at sentencing, was not asked to choose the offense upon which Jones would be sentenced, the trial court orally imposed a concurrent sentence, and the sentencing entry imposes a concurrent sentence. In short, there is no arguably meritorious appellate argument that the parties agreed the two offenses would be treated as allied offenses of similar import or that Jones' sentence violates such an agreement.

{¶ 5} New counsel was appointed to represent Jones regarding his desire to vacate his guilty plea. New counsel did not file a written motion seeking vacation of the plea with the trial court, it seems, accepting Jones' protest at the sentencing as an oral Crim.R. 32.1 motion to vacate the guilty plea.

{¶ 6} The trial court, on April 5, 2017, conducted a hearing regarding the vacation motion. Jones testified and the State presented the testimony of Jones' trial counsel. Jones' testimony reiterated and expanded upon his contention that he informed trial counsel that if his sentence was going to be five or six years, he preferred a jury trial, that trial counsel "specifically [informed me the judge] wasn't going to give me five or six years – specifically told me that[,]" and that he was "manipulated" into accepting the negotiated plea agreement. Jones, when confronted with his negative response to the Crim.R. 11 question concerning whether he had been promised anything in addition to the plea agreement placed on the record, testified he so responded "because I wasn't supposed to say anything during that time." Jones further explained his silence by testifying that trial counsel indicated that the trial judge and he were college classmates who have known each other for over thirty years and that the trial judge would not lie to him. Jones testified that he, based upon the relationship between trial counsel and the judge, concluded that the trial judge, despite the Crim.R. 11 discussion to the contrary, had informed trial counsel that the prison term would be less than five years.

{¶ 7} Trial counsel's testimony regarding the plea discussions he had with Jones sets forth a significantly different version of events. Trial counsel testified that he did not inform Jones that his prison term would be less than five years. Further, trial counsel, when asked to respond to Jones' testimony concerning his relationship with the trial

judge, indicated that in response to Jones' inquiry he truthfully informed Jones that the trial judge and he had been law school classmates, but that he "was also truthful… regard[ing]… the fact that there were no assurances made as to what sentence he would get." Trial counsel did testify he informed Jones that, "given his conversations with the Court and [the assistant prosecuting attorney] [he] did not feel it likely he would get more than five years…" Trial counsel also testified that he "repeatedly" informed Jones that "the Judge is not going to tell us in advance what he's going to do with your sentence. I know you want me to tell you what he's going to do but I can't." Trial counsel further testified that Jones wanted "me to assure him he wasn't going to get five or six years… [but] I made it very clear that I could not assure him of that; however [I informed him] I felt that [the plea agreement] was the best way to resolve the case based upon what I knew about the case." Jones, according to trial counsel's testimony, "ultimately agreed" with this assessment and entered the plea as discussed.

{¶ 8} Trial counsel, turning to the sentencing hearing, testified that before the hearing Jones was "uneasy and he was agitated[,]" indicating he thought he was going to be sentenced to five years. Jones, however, did not inform trial counsel that he wanted to withdraw his guilty plea, and the record, as already noted, reflects that Jones did not express a desire to withdraw his plea until the five year prison sentence was pronounced.

{¶ 9} The trial court, on April 5, 2017, filed a written decision overruling Jones' motion. The trial court stated, in pertinent part, "there is absolutely no evidence to suggest [that Jones] has met his burden of manifest injustice. Indeed, the transcript of the plea proceeding is replete (sic) that [Jones] entered his plea knowingly, intelligently, and voluntarily." This appeal followed.

{¶ 10} We appointed appellate counsel who, on November 13, 2017, filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) stating "[a]fter diligent review… counsel has discovered no non-frivolous issues for appeal." Appellate counsel, consistent with his duties under *Anders*, identified and reviewed four potential assignments of error as follows: (1) the trial court did not comply with Crim.R.11 when accepting Jones' guilty plea; (2) Jones' sentence is contrary to law; (3) the trial court erred by overruling Jones' motion to withdraw his guilty pleas; and (4) trial counsel provided ineffective assistance of counsel. Appellate counsel, as part of the *Anders* brief and by a separately filed motion, requested permission to withdraw as Jones' counsel.

{¶ 11} We, on November 22, 2017, informed Jones of the *Anders* filing and that within sixty days of November 22 he had the right to file a pro se brief. Jones did not file a brief.

{¶ 12} Appellate counsel's first potential assignment of error is as follows:

> THE TRIAL COURT FAILED TO COMPLY WITH THE REQUIREMENTS OF CRIMINAL RULE 11 IN ACCEPTING [JONES'] GUILTY PLEA.

{¶ 13} Appellate counsel's focus is whether there is a non-frivolous argument that the trial court's failure to advise Jones that by pleading guilty he forfeited his right to appeal any pretrial rulings (including the motion to suppress) made the plea less than knowing, voluntary, and intelligent. Appellate counsel correctly notes that Crim.R. 11(C)(2)(b) requires the trial court to inform the defendant of the effect of his plea, but the defendant, as part of this discussion, does not have to be informed that by pleading guilty

he is waiving his right to appeal any pretrial rulings. *State v. Portis*, 2d Dist. Clark No. 2013-CA-53, 2014-Ohio-3641, ¶ 12; *State v. Satterwhite*, 2d Dist. Montgomery No. 23142, 2009-Ohio-6593. The rationale for this conclusion is that "[t]he information that a guilty plea is a complete admission of guilt, along with the other information required by Crim.R. 11, assures that defendants enter pleas with knowledge of the rights they would forego and creates a record by which appellate courts can determine whether pleas are entered voluntarily." *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 11, citing *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990); *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

{¶ 14} However, if the trial court says anything that could create confusion concerning the defendant's appellate rights or if the defendant indicates such confusion, this, could, of course, undermine the Crim.R. 11(C)(2)(b) effect of plea discussion and render the plea less than voluntary, knowing, and intelligent. *Portis* at ¶ 12.

{¶ 15} The trial court, turning to this case, informed Jones that a guilty plea acted as a complete admission of the conduct to which he was entering a plea with Jones indicating he understood this. Further, the trial court made no statements that could have caused Jones to be confused about his appellate rights, and Jones said nothing that indicated such confusion. Additionally, the trial court otherwise fully complied with Crim.R. 11. We, accordingly, conclude there is not a potentially meritorious appellate argument that the trial court's failure to inform Jones that his guilty plea acted to waive his right to appeal any pretrial rulings violated Crim.R. 11 or otherwise interfered with the knowing, voluntary, and intelligent nature of the plea. We further conclude that there is not a potentially worthy appellate argument that the trial court failed in any other way to

comply with Crim.R. 11 or that Jones' plea was not knowingly, voluntarily, and intelligently entered into.

{¶ 16} Appellate counsel's second potential assignment of error is as follows:

THE SENTENCE IMPOSED BY THE TRIAL COURT WAS CONTRARY TO

LAW OR CONSTITUTED AN ABUSE OF DISCRETION.

{¶ 17} We initially note, contrary to the suggestion contained in the potential assignment of error, that we do not review felony sentences under an abuse of discretion standard.   Instead, as explained in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, an appellate court, given the plain language of R.C. 2953.08(G)(2), "may vacate or modify a felony sentence only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law."   *Marcum* at ¶ 1.   "This is a very deferential standard of review, as the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find the record fails to support the trial court's findings."   *State v. Cochran*, 2d Dist. Clark No. 2016-CA-33, 2017-Ohio-217, ¶ 7.   (Citations omitted.)

{¶ 18} A trial court may impose any sentence which is within the authorized statutory range, and the trial court, in so doing, is not required to state its findings or set forth its reasoning for imposing a particular sentence.   *State v. Scott*, 2d Dist. Montgomery No. 27445, 2017-Ohio-9316, ¶ 44, citing *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491 (2d Dist.).   This being said, the trial court "must consider the statutory policies that apply…, including those set out in R.C. 2929.11 and R.C. 2929.12."   *Scott* at ¶ 44. (Citations omitted.)

{¶ 19} Turning to the pending case, Jones' five year prison term is within the statutory range, and there is no non-frivolous argument that the sentence is otherwise contrary to law. We also conclude there is not a potentially meritorious appellate argument that we could find by clear and convincing evidence that the trial court did not consider R.C. 2929.11 and R.C. 2929.12 when imposing Jones' sentence. The trial court stated such consideration, and there is simply nothing about this mid-range, mandatory sentence that would suggest otherwise.

{¶ 20} Appellate counsel's third suggested error is the following:

THE TRIAL COURT ERRED IN OVERRULING [JONES'] MOTION TO VACATE HIS GUILTY PLEA.

{¶ 21} We first note there is not a potentially worthy argument that the trial court erred by using the manifest injustice standard when evaluating whether Jones' Crim.R. 32.1 motion should be granted. Crim.R. 32.1 provides that a motion to withdraw a guilty plea "may be made only before sentence is imposed, but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." We have consistently held that the manifest injustice standard is triggered when the defendant, as here, voices a desire to withdraw a guilty plea upon learning of the sentence, whether this knowledge is gained just before or during the sentencing hearing. *State v. Haney*, 2d Dist. Montgomery No. 25344, 2013-Ohio-1924; *State v. Sylvester*, 2d Dist. Montgomery No. 22289, 2008-Ohio-2901; *State v. Fugate*, 2d Dist. Montgomery No. 21574, 2007-Ohio-26. As we stated in *Fugate*, "[t]he manifest injustice standard is aimed at cases where a defendant pleads guilty without knowing what his sentence will be, finds out that his sentence is worse than he had hoped

and expected, and then seeks to vacate his plea." *Id.* at ¶ 10. We similarly stated in *State v. Simpson*, 2d Dist. Montgomery No. 24266, 2011-Ohio-6181 that "a defendant cannot test the sentencing waters and then move to vacate his plea just before sentencing if he receives an unpleasant surprise." *Id.* at ¶ 8. (Citation omitted.)

{¶ 22} We further conclude there is not a potentially meritorious argument that the trial court, under the manifest injustice standard, erred by overruling Jones' plea vacation motion. We first note that a trial court's Crim.R. 32.1 decision is reviewed under the deferential abuse of discretion standard. *State v. Mogle*, 2d Dist. Darke Nos. 2013-CA-4, 2013-CA-5, 2013-Ohio-5342. (Citations omitted.)

{¶ 23} We, in analogous circumstances, have had the opportunity to review whether a manifest injustice has occurred. In *State v. McComb*, 2d Dist. Montgomery Nos. 22570, 22571, 2008-Ohio-295, the Defendant, Davion McComb, upon being informed that he was receiving a two year prison term instead of the expected, at least from his perspective, community control sanctions (CCS) sentence, sought to withdraw his guilty plea. McComb asserted that his attorney informed him that at worst he would be sentenced to CCS with a potential CCS condition being completion of the MonDay program. McComb's counsel denied such a promise, but did indicate that he informed McComb that CCS was probable.

{¶ 24} We stated the following concerning a manifest injustice evaluation when a defendant, following interaction with counsel, arrives at a mistaken conclusion concerning the severity of his sentence:

> The reason for the belief is key. If defense counsel caused the belief, what counsel exactly said must be examined. A manifest injustice does not

necessarily arise merely because counsel is wrong about the sentence that is actually imposed. Only if counsel promised the defendant that a guilty plea will result in a lower sentence than is actually imposed would a manifest injustice potentially result. (Citation omitted.) If counsel simply made a prediction, there would be no manifest injustice. (Citation omitted.) In other words, counsel's erroneous advice and incorrect speculation regarding the sentence that is likely to be imposed potentially results in a manifest injustice only if counsel said that a guilty plea *will* result in a particular sentence, but not if counsel said that it *probably* will result. (Emphasis in original.)

*McComb* at ¶ 9.

**{¶ 25}** We, based upon the circumstances giving rise to McComb's mistaken sentencing belief, concluded that McComb did not establish a manifest injustice justifying vacation of his guilty plea. We explained that McComb's attorney did not promise a lesser sentence, but, instead, reasonably "speculated" that he would receive a lesser sentence, but that McComb's reliance on his counsel's speculation did not constitute manifest injustice. *Id.* at ¶ 17.

**{¶ 26}** In *State v. Mogle*, 2013-Ohio-5342, we came to a different manifest injustice conclusion. Mogle's counsel, based upon a misunderstanding concerning the trial court's sentencing intention, informed Mogle that he would receive a CCS sentence. The trial court, instead, imposed a prison term. Additionally, the trial court did not ask Mogle during the Rule 11 discussion if he had received any promises other than those contained in the plea form. And, finally, Mogle wrote a letter which he brought to the sentencing

hearing wherein he attempted to verify the purported CCS assurance. The trial court overruled the motion.

**{¶ 27}** We noted, speaking generally, that the reason for a defendant's mistaken sentencing belief is the critical inquiry stating that "[i]f the Defense Attorney told the Defendant what he speculated the sentence would be, and the attorney was mistaken, there is no manifest injustice. If the Defense Attorney promised the Defendant what the sentence would be and he is sentenced to more, manifest injustice is potentially present." *Id.* at ¶ 26, citing *State v. McComb.*

**{¶ 28}** We concluded, with the above framework in mind, that the trial court's denial of the vacation motion was an abuse of discretion stating as follows:

> Although the plea form states no other promises were made, the weight of the evidence heavily favors Mogle's motion. Mogle proved by a preponderance of the evidence that he relied on a promise for a community control sentence and demonstrated manifest injustice…

*Mogle* at ¶ 27.

**{¶ 29}** The trial court, turning back to the pending case, accepted trial counsel's testimony regarding the plea discussions between Jones and trial counsel. Trial counsel, based upon his testimony, did not promise Jones that he would receive a certain sentence, and counsel's ruminations regarding the trial court's probable sentence proved accurate. Under these circumstances, there is not, as already stated, a potentially meritorious argument that the trial court erred by overruling Jones' Crim.R. 32.1 motion to vacate his guilty plea.

**{¶ 30}** Appellate counsel's final possible assignment of error is as follows:

[JONES] WAS DENIED HIS CONSTITUTIONALLY GUARANTEED RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 31} The *Anders* brief notes that "the record contains little to raise any issue of ineffective assistance of counsel[,]" but the brief does posit that a potential non-frivolous argument is that trial counsel provided ineffective assistance because Jones, at least arguably, pleaded guilty without realizing that his plea eliminated his ability to appeal pretrial rulings. This is the repackaging of the suggested first assignment of error, and, as already discussed, such an argument, on this record, would be frivolous.

{¶ 32} Appellate counsel finally suggests that trial counsel's sentencing representations could constitute ineffective assistance. This is the repackaging of appellate counsel's third suggested assignment of error, and, as already discussed, such an argument, on this record, would be frivolous.

{¶ 33} In short, there is nothing on this record that would give rise to a potentially meritorious argument that trial counsel provided ineffective assistance of counsel.

{¶ 34} We, in addition to the discussed issues, have, consistent with our duty under *Anders*, reviewed the entire record with this review including the *Anders* brief, the plea and sentencing transcripts, and the sentencing entry. This review has not revealed any arguably meritorious appellate issues.

{¶ 35} We have found no non-frivolous issues for appellate review. Counsel's motion to withdraw is granted. Accordingly, the trial court's judgment is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.

Copies mailed to:

Nathaniel R. Luken
Marshall G. Lachman
Matthew L. Jones
Hon. Michael A. Buckwalter